IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACY JOHNSON, | ) | CASE NO. 1:14-CV-01884 |
| | ) | |
| Plaintiff, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Tracy Johnson ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 4, 2011, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of December 31, 2009. (Transcript ("Tr.") 15.) Plaintiff's claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On January 10, 2013, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On April 19,

2013, the ALJ found Plaintiff not disabled.  (Tr. 12.)  On July 24, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 25, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this matter.  (Doc. Nos. 11, 12.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in assessing Plaintiff's credibility; and (2) the ALJ erred in relying on VE testimony.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in December 1967 and was 42-years-old on the alleged disability onset date.  (Tr. 23.)  She had a limited education and was able to communicate in English.  (Tr. 24.)  She had past relevant work as a park worker/groundskeeper and an office manager/administrative clerk.  (Tr. 23.)

### B.  Medical Evidence

#### 1.  Medical Reports

In early June 2011, Plaintiff saw a neurologist, Joyce Lee-Ianotti, M.D., at the request of her treating physician, Dr. Redahan.  (Tr. 553-558.)  Plaintiff complained of left facial and arm numbness.  (Tr. 553.)  She also reported having headaches.  (*Id.*)  Dr. Lee-Ianotti noted that Plaintiff had severe osteoarthritis of the hips and low back and used a cane to ambulate.  (*Id.*)  On examination, Dr. Ianotti observed a stable unassisted gait and reported that Plaintiff could do tandem, heel, and toe walking without difficulty.  (Tr. 557.)  Plaintiff's gait was unassisted and stable, and she had normal stride length and arm

swing.  (*Id.*)  Dr. Lee-Iannoti ordered an MRI.  (*Id.*)

An MRI from June 9, 2011, revealed an aneurysm in Plaintiff's left caratoid artery.  (Tr. 561.)  On October 20, 2011, Robert Geertman, M.D., performed surgery to relieve the non-ruptured cerebral aneurysm.  (Tr. 630-642.)

On November 29, 2011, Plaintiff saw M. Andrew Greenwood, M.D., for complaints of back pain.  (Tr. 719-724.)  Dr. Greenwood recommended aquatic physical therapy, followed by physical therapy for flexion exercises and core strength, and then progression to a home exercise program.  (Tr. 719.)  Plaintiff indicated that she wanted to defer Dr. Greenwood's recommendations "for now."  (*Id.*)  Dr. Greenwood observed that Plaintiff was still having headaches following the clipping of her aneurysm.  (Tr. 720.)

On December 27, 2011, Plaintiff saw David V. House, Ph.D., for a clinical interview/mental status evaluation.  (Tr. 702-709.)  Dr. House noted that Plaintiff suffered from arthritis, fibromyalgia, headaches, and hypertension.  (Tr. 704.)  He also noted that Plaintiff ambulated with a walker and that she "seemed uncomfortable or restless in the chair in the examiner's office."  (Tr. 705.)  Plaintiff informed Dr. House about her aneurysm and the related surgery.  (Tr. 704.)  In terms of Plaintiff's mental health, Dr. House noted that Plaintiff had never been hospitalized or sought emergency treatment.  (*Id.*)  When asked about counseling, Plaintiff said that she "talks to an individual named Tony Tyslar, whom she will see on December 29, 2011."  (*Id.*)  Plaintiff told Dr. House that Dr. Greenwood had prescribed Cymbalta.  (*Id.*)  Dr. House found that Plaintiff had no significant deficits in terms of remote memory, but commented that her recent memory was not as developed, as she seemed distracted.  (Tr. 708.)  Dr. House noted that Plaintiff was somewhat socially isolated, but concluded that Plaintiff would not have significant

3

difficulties getting along with others.  (*Id.*)  Dr. House further noted that Plaintiff seemed able, at least to some degree, to retain some focus, and that she retained some capabilities for resilience.  (*Id.*)

### 2. Agency Reports

On January 27, 2012, Plaintiff saw Edward Butler, M.D., for a consultative examination.  (Tr. 856-864.)  Plaintiff reported that she had pain involving her cervical spine, lumbar spine, shoulders, and thighs.  (Tr. 856.)  She described her pain as constant, sharp, and cramping.  (*Id.*)  Plaintiff told Dr. Butler that since she had the operation for her aneurysm, she experienced pain at the left side of her skull.  (*Id.*)  She rated that pain a six out of 10.  (*Id.*)  Plaintiff reported that her headaches were not getting any better.  (*Id.*)  Dr. Butler noted that Plaintiff had an antalgic gait on the right side and could walk on her heels and toes without difficulty.  (Tr. 858.)  He further noted that she could perform a partial squat and rise to 30 degrees of flexion at the knees; her stance was normal; she used no assistive devices; she needed no help changing for the exam or getting on and off the exam table; and she was able to rise from her chair without difficulty.  (*Id.*)  Dr. Butler's diagnoses included the following: fibromyalgia; chronic bronchitis; seasonal allergies; chondromalacia of the patellas; history of arthritis of the lumbar spine and hips; left internal carotid artery aneurysm, clipped; chronic headache; hypertension; and morbid obesity.  (Tr. 860.)  Dr. Butler opined that Plaintiff would have mild limitations when pushing, pulling, lifting, and climbing.  (*Id.*)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff identified herself as a younger individual with a tenth grade education, who

4

had training as a certified nurse assistant (CNA).  (Tr. 37.)  The ALJ noted that Plaintiff brought a walker to her hearing, and he asked her about her use of assistive devices.  (Tr. 38.)  Plaintiff testified that if she did not use a cane or a walker, her legs would give out.  (*Id.*)  She added that she needed an assistive device to remain steady when walking due to hip, lower back, and knee pain.  (*Id.*)  She testified that Dr. Redahan prescribed the cane and that Dr. Greenwood prescribed the walker.  (*Id.*)  Plaintiff also testified that her vertebrae were not sitting correctly and that her spine was crooked.  (*Id.*)  She stated that she had fibromyalgia and that her pain traveled from her hips to her shoulders.  (Tr. 39.)

Plaintiff further testified that she suffered from severe arthritis and bronchitis, and that she had problems with her head as a result of a clamp that doctors placed there after she underwent an aneurysm repair.  (*Id.*)  She stated that she had suffered headaches since the aneurysm repair and that the headaches caused numbness on the left side of her face.  (*Id.*)  Plaintiff testified that she could not stand for long time periods and that she could not shop for herself.  (*Id.*)  She stated that her family had to cook and clean for her and that she needed help getting in and out of the shower.  (*Id.*)

Plaintiff testified that she received treatment for depression that included the medications Cymbalta and Lyrica, as well as a sleeping pill and a pill for depression.  (Tr. 41.)  She stated that the medications helped somewhat.  (*Id.*)  Plaintiff testified that she experienced headaches two times each week and she felt that the headaches were caused by the surgery she underwent for an aneurysm.  (Tr. 45.)  She stated that the headaches would last about an hour and that her face would become so numb that she could not breathe.  (*Id.*)

5

### 2. Vocational Expert's Hearing Testimony

Mr. Macy, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who would be capable of performing light work with some limits. (Tr. 57.) The individual would be limited to frequent use of ramps and stairs; no climbing of ladders, ropes, and scaffolds; and frequent stooping, kneeling, crouching, and crawling. (*Id.*) The individual must avoid even moderate exposure to hazards such as machinery and heights. (*Id.*) The individual would carry out simple routine tasks and could interact occasionally with others in a work environment where changes are less than frequent. (*Id.*) The individual could not engage in arbitration, negotiation, conflict resolution, managing others, or being responsible for the safety of others. (*Id.*) The VE testified that the hypothetical individual could perform such jobs as a wire worker, an electronics worker, and a table worker. (Tr. 58-59.)

The ALJ asked the VE whether the hypothetical individual previously described would be capable of performing any jobs if she required a cane for ambulation. (Tr. 59.) The VE testified that the individual would be capable of performing the job of a table worker, and "maybe 20 to 30 percent" of wire worker and electronics worker jobs. (*Id.*)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. *20 C.F.R. § 416.905*; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the

       Social Security Act through September 30, 2013.

2.     The claimant has not engaged in substantial gainful activity since June 11, 2011, the alleged onset date.

3.     The claimant has the following severe impairments: trochanteric bursitis bilateral hips, obesity, clipped aneurism, mild degenerative disc disease, affective disorders, anxiety disorders, and myofascial pain.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she is limited to frequent climbing of ramps and stairs and no climbing of ladders, ropes, and scaffolds; she is limited to frequent stooping, kneeling, crouching, and crawling; she must avoid even moderate exposure to hazards such as machinery and heights; she can carry out simple routine tasks and can interact occasionally with others in a work environment where changes are less than frequent. She cannot engage in arbitration, negotiation, conflict resolution, managing others, or being responsible for the safety of others.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born in December 1967 and was 42-years-old, which is defined as a younger individual age 18-49 on the alleged disability onset date.

8.     The claimant has a limited education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

|      |      |
| ---- | ---- |
| 11.  | The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2009, through the date of this decision. |

(Tr. 18-33.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignments of Error

### 1.  The ALJ Erred in Assessing Plaintiff's Credibility.

Plaintiff takes issue with the ALJ's assessment of her credibility regarding her complaints of pain.  According to Plaintiff, the ALJ failed to adequately address her "many attempts at pain and depression relief and the side effects of those attempted treatments – evidence which actually supported her complaints regarding disabling symptoms. . . ." (Plaintiff's Brief ("Pl.'s Br.") 15.)  For the following reasons, Plaintiff's argument is not well taken.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for his credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a

two-step test known as the "Duncan Test" to determine the credibility of such complaints. *See* Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)). First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. Id. Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. Id. In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[1] *See* Felisky, 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529(c)). Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. Bowman v. Chater, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all,

---

[1] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

11

of the relevant factors in his assessment of Plaintiff's condition. (Tr. 19-23.) The ALJ examined Plaintiff's daily activities, her treatments and her responses to those treatments, the clinical examination findings, and the physician statements of record. (*Id.*) Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible ." (Tr. 23.) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that his RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence. In finding that Plaintiff was capable of performing a limited range of light work, the ALJ discussed the following evidence:

- Plaintiff is able to perform household chores, self-care, and drive. (Tr. 20.) She has a high degree of independence, appropriateness, effectiveness, and sustainability of activities. (*Id.*)

- Plaintiff has no communication deficits. (Tr. 20.) She is able to express herself in a clear and coherent manner. (*Id.*) Although she is self-isolating, she reported that it was a result of her physical limitations and not because she is phobic. (*Id.*) She was able to interact at her hearing and with medical professionals. (*Id.*)

- Although Plaintiff is sensitive to stress, she had the ability to concentrate during her hearing and consultative examinations, and she had the ability to respond appropriately to questions. (Tr. 20.)

- The ALJ noted that Plaintiff continued to seek treatment for joint pain and obesity, but she was consistently found to have full strength, sensation, and range of motion in her extremities, and straight leg raising was negative. (Tr. 22.)

- A lumbar MRI from April 15, 2010, showed mild facet arthropathy that was unremarkable based on Plaintiff's age. (Tr. 22.)

- In March 2011, Dr. Redahan observed that Plaintiff had normal muscle tone, power, coordination, and strength. (Tr. 22.)

- In April 2011, Dr. Greenwood observed that Plaintiff was capable of heel, toe, and tandem walking. (Tr. 22.) Plaintiff maintained 5/5 muscle strength, with tenderness to palpation over the lumbar spine and straight leg raising positive at 80 degrees in a seated position. (*Id.*)

- The ALJ acknowledged that Plaintiff experienced headaches after she underwent clipping of an aneurism. (Tr. 22.)

- In December 2011, consultative examiner Dr. House observed Plaintiff to be groomed, alert, and oriented. (Tr. 22.) He observed that Plaintiff was able to interact and answer questions. (*Id.*) Dr. House noted that Plaintiff was distracted, but was able to retain some focus and had no significant deficits in memory. (*Id.*) He further opined that although Plaintiff was self-isolating, she would not have significant difficulties getting along with others. (*Id.*)

- Dr. Butler observed that Plaintiff maintained 5/5 muscle strength with normal range of motion in her extremities and slightly reduced range of motion in the lumbar spine. (Tr. 22.) He also observed that Plaintiff was able to ambulate effectively, maintained normal sensation and reflexes, and had no joint abnormalities. (Tr. 23.)

- The ALJ noted that although Plaintiff reported having difficulty ambulating, lifting, and carrying, she has consistently had normal manual muscle testing. (Tr. 23.) Although Plaintiff stated that she has been prescribed a cane/walker, her statements were not supported by her treating physician records and she has been observed to successfully walk unaided with an antalgic gait. (*Id.*)

Thus, contrary to Plaintiff's assertion, the ALJ did not ignore Plaintiff's complaints of headaches, depression, and difficulty standing and walking. Rather, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective evidence. This inconsistency is an appropriate basis for an adverse credibility finding. *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is

appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")  Accordingly, the ALJ adequately conducted a proper pain and credibility analysis, and Plaintiff's first assignment of error does not present a basis for remand.

### 2.  The ALJ Erred in Relying on VE Testimony.

Plaintiff argues that the ALJ erred in relying on VE testimony to conclude that Plaintiff can perform jobs that exist in significant numbers in the national economy, because the ALJ's hypothetical question to the VE did not account for Plaintiff's "need to stand every 20 minutes for 10 minutes."  (Pl.'s Br. 17.)

The ALJ concluded that Plaintiff had the following RFC[2]:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she is limited to frequent climbing of ramps and stairs and no climbing of ladders, ropes, and scaffolds; she is limited to frequent stooping, kneeling, crouching, and crawling; she must avoid even moderate exposure to hazards such as machinery and heights; she can carry out simple routine tasks and can interact occasionally with others in a work environment where changes are less than frequent.  She cannot engage in arbitration, negotiation, conflict resolution, managing others, or being responsible for the safety of others.

(Tr. 21.)  In determining that Plaintiff was capable of performing work as a wire worker,

---

[2]  Residual functional capacity (RFC) is an indication of a claimant's work-related abilities despite her limitations.  See 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  See 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  When determining a claimant's RFC, the ALJ is required "to consider the combined effect of all of the claimant's impairments. . . ."  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992).

14

electronics worker, and table worker, the ALJ relied on the testimony of the VE, who concluded that a hypothetical individual of Plaintiff's age, education, and work experience with the residual functional capacity described above could perform the aforementioned unskilled jobs. (Tr. 24.) Plaintiff has not challenged the qualifications of the VE or the adequacy of his testimony. Rather, Plaintiff maintains that the ALJ erred in relying on the VE's testimony, because the ALJ's hypothetical question to the VE did not adequately account for Plaintiff's alleged need to stand every 20 minutes for 10 minutes. Thus, Plaintiff's argument is essentially a challenge to the ALJ's RFC finding. This argument is without merit, as the substantial evidence described in detail in this Court's analysis of Plaintiff's first assignment of error[3] supports the ALJ's conclusion that Plaintiff can perform a limited range of light work.

Moreover, as the Commissioner notes in her Brief, Plaintiff has failed to cite to any evidence in the record to support her claim that she needed to stand every 20 minutes for 10 minutes at a time, other than her self-reports. (Defendant's Brief ("Def.'s Br.") 9.) As discussed above in this Court's analysis of Plaintiff's first assignment of error, a review of the ALJ's detailed decision indicates that in determining Plaintiff's RFC, the ALJ adequately considered Plaintiff's testimony, including her subjective complaints of pain and difficulty standing and walking. (Tr. 21-23.) In his decision, the ALJ specifically noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 23.) The ALJ considered all of Plaintiff's reported symptoms to the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record to support the conclusion that Plaintiff could

---

[3] *See supra* pp. 12-13.

perform light work with some additional limitations. (Tr. 21.) As the ALJ found Plaintiff to be less than fully credible and her alleged limitations were not assessed by a physician, the ALJ was not required to incorporate all of her alleged limitations into his hypothetical questions to the VE.

In determining Plaintiff's RFC, the ALJ appropriately considered the combined effect of all of Plaintiff's impairments to render an RFC determination that is supported by substantial evidence in the record. The VE testified that an individual with Plaintiff's RFC would be capable of performing work as a wire worker, an electronics worker, and a table worker, and the ALJ reasonably relied on the VE's testimony in making his step five finding. For the foregoing reasons, Plaintiff's case does not require remand.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 16, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

16